Koons *v.* Manifold.

---

### Koons, Administrator, *v.* Manifold et al.

[No. 3,881.    Filed November 26, 1901.]

Wills.—*Construction.—Life Estate.—Remainder-man.*—A testator by the terms of his will gave to his wife certain described real estate and all of his personal property, after her death the same to go to and be equally divided between two persons named, in equal proportions, if they should prove to be sober and industrious, but if it should inure to her by death of either or both of them without issue of their bodies, or want of sobriety or industrious habits, then she to use her discretion in disposing of the same. In a subsequent

clause he devised other real estate to one of the remainder-men subject to a charge of $1,000 "to be paid by him into my estate two years from the time of his arriving at the age of twenty-one years," unless he should not elect to accept such provision, in which case the real estate to remain the property of testator's wife and "be disposed of as by my will directed, with the residue of my real estate given her." The devisee accepted the provision, and, upon his arrival of age, after the settlement of testator's estate, executed his note for $1,000 in favor of the wife and paid to her all of the interest accruing thereon to the time of her death. *Held*, that the note became the property of the remainder-men at the death of the wife, and that her administrator could not maintain an action thereon.

From Henry Circuit Court; *W. O. Barnard,* Judge.

Action by Benjamin F. Koons, administrator of the estate of Anna Ridgeway against Charles B. Manifold and others on a promissory note. From a judgment in favor of defendants, plaintiff appeals. *Affirmed.*

*E. H. Bundy, J. M. Morris* and *M. L. Koons,* for appellant.

*W. A. Brown, M. E. Forkner* and *G. D. Forkner,* for appellees.

BLACK, J.—The appellant, as administrator of the estate of Anna Ridgeway, deceased, sued the appellees, Charles Benton Manifold, Lucy V. Manifold, his wife, and Sally Ann Thompson, to recover upon a promissory note made by the first named appellee to Henry C. Chamness, guardian of Anna Ridgeway, for $1,624.33, and to foreclose a mortgage on real estate executed by the appellees Charles B. Manifold and Lucy B. Manifold, his wife, given to secure the promissory note; the other appellee, Sally A. Thompson, being made a defendant as a junior mortgagee. In the mortgage in suit, after the description of the note secured thereby, were the words: "Money of Henry Manifold estate."

The merits of the cause and the matter for decision here are presented by a special finding. The court found and stated the facts in substance as follows: One Henry Mani-

fold died in Henry county, Indiana, on the 6th of August, 1866, testate, seized in fee simple of certain land, 160 acres in that county, described as the northwest quarter of section twenty-four, township eighteen north, of range eleven east, and also other real estate in the same county, and being the owner of personal property of the value of $3,000. He left no children, but left surviving him his widow, Anna Manifold, who subsequently married Nimrod Ridgeway. Soon after the death of Manifold, and soon after the marriage of his widow, she became insane and so remained up to the time of her death, which occurred on the 1st of June, 1899. The last will and testament of Henry Manifold, deceased, was duly admitted to probate in Henry county on the 18th of August, 1866, and the executor named therein duly qualified as such, took upon himself the duties of his trust, and afterward filed in the Henry Circuit Court his final settlement of said estate, and was by that court fully and finally discharged, said estate having been fully administered by him.

The portions of the will of Henry Manifold requiring construction in this cause were as follows: "(2) I will and bequeath to my beloved wife, Anna Manifold, during her natural life, the following described real estate, to wit: The northwest quarter of section twenty-four, township eighteen north, of range eleven east, containing 160 acres, also all my personal property after the payment of all my debts and funeral expenses; and after her death the same is to go to and be equally divided between Robert H. Taylor and Charles Benton Manifold, if they should prove to be sober and industrious, in equal proportions; and in case that either of them should not prove sober and industrious, then and in that case their parts or part is to be and remain in my wife, to be by her disposed of as she may think best; and it is my will, wish and desire that she shall use her discretion in disposing of the same, if it should inure to her by the death of either or both of them dying without issue

of their bodies, or want of sobriety and industrious habits. It is my will, and I bequeath to Charles Benton Manifold 100 acres of land, the same being the south half of the southeast quarter of the northwest quarter of section thirteen, township eighteen, range eleven east, containing twenty acres, and the east half of the southwest quarter of section thirteen, township eighteen, range eleven east, containing eighty acres, for which there is to be a charge made against him of $1,000, to be by him paid into my estate two years from the time of his arriving at the age of twenty-one years. If he should not elect to take the land, then and in that case he is to have $3,000 in money and is exempt from paying the $1,000 above specified, and the real estate hereby bequeathed is to remain as the real property of my wife subject to her disposal and to be by her disposed of as by my will directed with the residue of my real estate given her. * * * I hereby constitute and appoint Daniel Waltz my sole executor to execute this my last will and testament."

The legatees, Robert H. Taylor and Charles B. Manifold, were taken when children by the testator and his said wife and lived with them as members of their family until the time of the making of the will and the death of the testator. An inquest of insanity was held in the Henry Circuit Court upon Anna Ridgeway, which resulted in a finding that she was a person of unsound mind and incapable of managing her estate; and a guardian was appointed for her. She remained under guardianship as a person of unsound mind until her death as above stated.

Charles Benton Manifold elected to take under the provisions of the will, and on the 22nd of October, 1893, after he became of full age, he executed and delivered to Henry C. Chamness, as guardian of Anna Ridgeway, insane, his promissory note for $1,624.33, due twelve months after date, with six per cent. interest from date until paid. He executed this note as evidence of the debt of $1,000 and

the interest thereon up to the time of its execution, which he owed and was to pay under the clause of the will above set out, he having elected, as before stated, to take the land devised to him in the will according to the conditions therein stated.   On the 24th of November, 1894, to secure the payment of the note, he executed and delivered to Henry C. Chamness, guardian of Anna Ridgeway, a mortgage on the following described real estate in Henry county, Indiana: "The south half of the southeast quarter of the northwest quarter of section thirteen, township eighteen north, range eleven east, containing twenty acres, also seventy-six and sixty four hundredths acres off the east half of the southwest quarter of section thirteen, township eighteen north, of range eleven east."   The mortgage was duly recorded November 30, 1894.

Prior to the bringing of this suit, Charles Benton Manifold had paid said note and mortgage, except the sum of $1,000, which payment included the interest due thereon up to the time of the death of Anna Ridgeway on June 1, 1899, and said note and mortgage, with the interest thereon at the time of the rendition of this finding, amounted to $1,038.33.   At the time of the death of Henry Manifold, his widow, Anna Manifold, had no estate in her own right, either real or personal, but some time after his death she acquired by descent from her mother eighty acres of land in Henry county, described in the finding.   She had no children by her second husband, Nimrod Ridgeway, and he died before her death.   After the death of Henry Manifold and his widow's marriage to Ridgeway, and up to the time she was declared insane and placed under guardianship, she lived with her husband, Ridgeway, on the land acquired by her by descent from her mother, as above stated, and received the rents and profits of the 160 acres of land devised to her for life by the will of Henry Manifold.   After she was declared insane and was placed under guardianship, the rents and profits of said land were col-

lected by her successive guardians and applied partly to her support and to repairs and improvements upon the real estate and the costs and expenses of the guardianship.   At various times during her life, Charles Benton Manifold made payments on the debt to her guardian for her support and maintenance.   The profits of the real estate and the payments made by Manifold were insufficient for her support, and to keep up the repairs and improvements on the farm, and to pay the costs and expenses of the guardianship. During the later years of her life, Anna Ridgeway was almost helpless from sickness and disease, and almost blind, and required a large amount of care, nursing, and attention, and it was necessary, by reason of her insane and helpless condition, to employ nurses and persons to look after and care for her.   On account of the insufficiency of the rents and profits of the real estate to pay for her support, nursing and care, and the repairs, taxes, and improvements ·upon said real estate, an indebtedness accrued to various persons for services· rendered in caring for her and for necessaries furnished for her support by divers persons, amounting to about $1,000.   After this indebtedness accrued, on the 6th of September, 1898, Henry H. Moore, who for some years prior to that time had been acting as guardian of Anna Ridgeway, filed in said court his resignation as such guardian, which was accepted on the same day.   On the 23rd of September, 1898, Charles Benton Manifold and Robert H. Taylor, beneficiaries under said will, procured themselves to be appointed as guardians of Anna Ridgeway, successors in the trust to Henry H. Moore.   On the 5th of January, 1899, Manifold and Taylor, as such guardians, filed in the Henry Circuit Court their petition for leave to mortgage the separate and individual real estate of Anna Ridgeway, above described, which she inherited from her mother as aforesaid after the death of her husband, to pay the indebtedness which had accrued as above found to various persons for her mainte-

nance, care, nursing, and support; which leave was granted by the court on their petition without any person appearing to the petition on behalf of their said ward.   Pursuant to this order, Manifold and Taylor, on the 12th of January, 1899, borrowed of the Citizens State Bank of New Castle, Indiana, the sum of $800, and, to secure the same, executed to the bank a mortgage upon the west half of the southwest quarter of section twenty-four, township eighteen north, of range eleven east, which was the sole, separate, and individual property of Anna·Ridgeway, as above found.   The indebtedness to the bank so secured remains wholly unpaid, and the mortgage is now a lien upon her real estate.   The personal property of which she died possessed amounts, according to the inventory on file, to about $147, and there are claims now pending for allowance against her estate for funeral expenses, doctor bills and expenses of her last sickness, amounting, so far as ascertained, to about $500; this sum being in addition to the debt of the Citizens State Bank, as above found.   The amount due on the note and mortgage executed by Charles Benton Manifold is necessary and will be required for the payment of her funeral expenses, doctor bills, and expenses of her last sickness, and for the payment of the debt due to the bank, as aforesaid.

Lucy Manifold, defendant, is the wife of Charles Benton Manifold, and the defendant Sally Ann Thompson has a lien upon the land of Charles Benton Manifold, which lien is junior and secondary to the lien of the mortgage so executed to Henry C. Chamness, guardian.   After the death of Anna Ridgeway, Benjamin F. Koons was duly appointed by the Henry Circuit Court as administrator of her estate, and gave bond and qualified, and is now acting as such. Upon these facts the court stated as a conclusion of law, that the law was with the defendants and that the court therefore found for the defendants.   The appellant having excepted to this conclusion, the court rendered judgment for the appellees.

In *Ridgeway* v. *Manifold,* 39 Ind. 58, the title to the 100 acres of land, consisting of a tract of twenty acres and a tract of eighty acres devised to Charles Benton Manifold in this will, being in controversy, it was held that he took a present estate therein subject to the payment of the $1,000 in two years after his majority, an election by him not being necessary before the vesting of the title.

By the terms of the will, for this land devised to him, there was to be a charge made against him of $1,000, "to be by him paid into my estate two years from the time of his arriving at the age of twenty-one years." This amount, if paid, was to be a part of the estate of the testator, being a definite sum of money. The testator, by his will, gave to his widow during her natural life certain other land, also all his personal property after the payment of his debts and funeral expenses; and after her death "the same" was to go to Taylor and the appellant Charles B. Manifold, if they should prove to be sober and industrious, in equal proportions; if either should not prove to be sober and industrious, their parts or part would be and remain in the widow to be disposed of as she might think best, she to use her discretion "in disposing of the same", if it should inure to her by death of either or both of them without issue of their bodies or want of sobriety or industrious habits. If Charles B. Manifold should not elect to take the 100 acres of land, but instead should receive $3,000, he would not be bound for the $1,000, and the 100 acres of land would be the real property of the widow, subject to her disposal, to be disposed of by her as by the will directed, with the residue of the testator's real estate given her.

That which by the first part of the second item of the will was given to the widow during her natural life, and after her death was to go to and be equally divided between Taylor and Charles B. Manifold, if sober and industrious, included both the real estate devised to the widow and the personal property of the testator after the payment of his

debts and funeral expenses; and it was only in case either of them should not prove sober and industrious, or either or both should die without issue of their bodies, that their parts or part, that is, the property included in the residuary devise and bequest, should be and remain in the widow to be disposed of as she might think best, she using her discretion in disposing of the same.

She was not granted the absolute power of disposing of either the real estate or the personal property which was given her by the will, except upon an event which does not appear to have occurred. Charles B. Manifold did not elect to take $3,000 and thereby to relinquish the 100 acres of land devised to him, which, if he had done so, would have been subject to the disposition of the widow, as would be the real estate, which, having been given to her for life, would be "the residue" given to her in case Taylor and Manifold should not prove sober and industrious or should die without issue of their bodies. In thus prescribing how the 100 acres of land would be subject to her disposition by comparison with the provision in a former part of the will, the comparison is limited to the disposition previously directed of "the residue" of real estate alone; but this can not be regarded as inconsistent with a construction of the previous provision as including both the real estate and the personal property referred to by the terms of the previous provision, or as negativing the expressed intention of the testator in the former part of the item that the residuum should consist of both the real estate and the personal property, which in the same clause and by the same words were given to the widow during her natural life.

An estate given in clear language can not be either cut down or enlarged in a subsequent part of the will except by words equally clear and decisive. *Goudie* v. *Johnston,* 109 Ind. 427; *Ross* v. *Ross,* 135 Ind. 367.

When the real estate and personal property are disposed

of in a will by words in one connection relating alike to each, so that the intention of the testator that they should both go together in the same way is manifest, the will should be so construed as to carry such intention into effect. *Mulvane* v. *Rude,* 146 Ind. 476; *Ross* v. *Ross, supra.*

The law favors the vesting of estates, and where a single clause in a will by its terms operates alike on real estate and personal property of the testator, if the real estate vests, the same effect will be given to the words relating to the personal property. *Heilman* v. *Heilman,* 129 Ind. 59; *Duncan* v. *Wallace,* 114 Ind. 169, 175.

A bequest of money for life and then over, it has often been held, gives not the fund, but only the interest upon it to the first taker. *Field* v. *Hitchcock,* 17 Pick. 182, 28 Am. Dec. 288; *Homer* v. *Shelton,* 2 Metc. (Mass.) 194; *Evans* v. *Iglehart,* 6 Gill & Johns. 171; *Clark* v. *Clark,* 8 Paige 152, 35 Am. Dec. 676.

In *Jones* v. *Stites,* 19 N. J. Eq. 324, it was said that when personal property, being the residuum of the estate, is bequeathed for life and then over, it should be converted into money and invested in the name of the executor, and only the interest should go to the tenant for life.

When chattels are bequeathed for life, not being specifically named, as where they are included in the residuary clause of the will, or under some general term, the first taker, it has been held, must convert them into money, use only the interest, and reserve the principal for the remainder-man. See Darlington on Per. Prop., p. 35; *Patterson* v. *Devlin,* 1 McM. Eq. (56 S. C.) 459.

"The general rule is that when a bequest for life consists of money, or of the residue of an estate, or of articles whose use is the conversion into money, the life tenant is not entitled to the specific possession and enjoyment of such money or residue, but an investment of the same should be made by the executor, so that the life tenant may receive the interest during his life. This rule requires the executor

to protect the interest of the remainder-man." Brantly on Per. Prop., §112. To this effect is *Brannock* v. *Stocker,* 76 Ind. 558, and *Wilborn* v. *Stocker,* 78 Ind. 602. See, also, *Wood* v. *Robertson,* 113 Ind. 323; *Goudie* v. *Johnston,* 109 Ind. 427.

We are not here concerned with any conflicting claims to any part of the personal property taken by the widow under the will other than this sum of money to be paid to the estate by Charles B. Manifold. It seems that the money on hand and the other personal property, whether perishable or enduring, except a small amount, insufficient to pay the debts of the deceased widow's estate, had been exhausted; whether rightly or otherwise we need not determine.

The decedent's estate was finally settled, and the executor was discharged, long before the time arrived for the payment of the $1,000 to the estate, and when that time arrived and the note in suit was given there was no acting executor to whom to pay the money or to give the note therefor; and the money does not appear to have been wanted for the purposes of the settlement of the estate of the testator, except as a part of the residuum which was to go to the widow for her life. This part of the residuum of the estate could not be invested in the name of the executor who settled the estate, at the date for its payment, and no other trustee to receive and invest it was named in the will. But the testator's widow, entitled to the interest on the fund for her life, had a trustee in the person of her guardian, and to him as such the note was made, which was secured by the mortgage in suit, the purpose of the transaction manifestly being to secure the $1,000 as part of the testator's estate invested in the name of the trustee of the life tenant, who was entitled during her life to the interest, which, accruing from day to day, terminated upon the death of the tenant for life, at least so far as her personal representative is concerned.

Judgment affirmed.