HUTCHINSON'S ESTATE ET AL. *v.* ARNT, ADMINISTRATRIX ET AL.

[No. 26,651. Filed May 1, 1936. Rehearing denied October 21, 1936.]

510

*Hickey & Dalsworth,* for appellants.

*Walter R. Arnold,* for appellees.

FANSLER, J.—William B. Hutchinson, Sr.; died testate in December, 1908. He was survived by his widow, Emma Hutchinson, a second wife, and three children, Amy Hutchinson Arnt and Grace Hutchinson Hitchock, daughters by his first wife, and William B. Hutchinson, a son by Emma Hutchinson. By his will he bequeathed $10,000 each to his three children; $2,000 each to his grandsons, and $1,000 each to his granddaughters, who were living or who might thereafter be born, to be paid when such grandchildren had attained the age of 18 years. Provision was made for the disposition of his estate in case his wife, Emma Hutchinson, preceded him in death, and that his life insurance be paid to the members of the family who were named beneficiaries in the several policies, and that the amounts payable on the policies in which his first wife was made beneficiary be equally divided between his daughters, in addition to the specific bequests to them in the will. The only provision having reference to his wife, or making any distribution of the residue of his estate, in the event she survived him, is as follows: "Fourth: After the payment of all my just and legal debts, and the legacies above set forth, I will that the residue of my estate shall go to my wife, Emma Hutchinson, including all of my real estate

and the balance of my personal property of every description to have and to hold the same for her use and benefit so long as she shall remain my widow, and to have the right to sell and convey any and all real estate, and to execute deeds of conveyance therefor. Provided, however, that in case she shall remarry, the said portion of my estate remaining undisposed of by her shall go to and be divided share and share alike among the heirs of my body." His wife, Emma Hutchison, was nominated as executrix, and was appointed and qualified as such, and entered upon the administration of the estate. No inventory or appraisement was filed in the estate, but a record set up on the books of the estate by Charles E. Arnt, the husband of Amy Hutchinson Arnt, showed personal property amounting to $129,041.14, including $20,000 of bank stock, which has been eliminated from consideration here, and $15,000 of corporate stock, which was afterwards written off and which is not involved in this litigation, leaving a net inventory on the books of the estate of $94,041.14. He left real estate of the value of $6,760, which was sold by the widow. On January 16, 1911, the executrix filed in the court where the estate was pending her final report and petition, reciting complete administration of the estate, except only the payment of legacies to minor grandchildren, and these have since been paid. At the time the report was filed all of the children joined in a written request that the final report and petition be approved. Notice of the final report was published, and, on April 15, 1911, the court made its order in which the final report is approved, and it is found that all things necessary in the administration of the estate have been done, and that all of the provisions of the will have been carried out and complied with, and the estate fully administered, except as to the legacies payable to grand-

children, and it was ordered that the estate "be and the same hereby is ordered stricken from the docket the same to be reinstated on motion of any person interested upon such notice, if any, as court shall then determine shall be given."

When the will was probated, Charles E. Arnt, who was president of the bank in which William B. Hutchinson, Sr., had an account, caused the account to be changed from the name of William B. Hutchinson, Sr., to William B. Hutchinson Estate. When she was appointed executrix Emma Hutchinson went into possession of all of the personal estate, and all monies were deposited in the estate account. In this account also was deposited $23,735.29 of the personal funds of Emma Hutchinson, the proceeds of a life insurance policy, and $7,650.00, the proceeds of the sale of real estate which belonged to her individually. After the filing of her final report this account was continued, and all of her personal funds, and all funds derived from the personal estate of William B. Hutchinson, Sr., were deposited therein until her death twenty-five years later. Checks signed by her as "Emma Hutchinson" were cashed by the bank and charged to this account. After the final report was approved she continued in possession of all of the personal estate of William B. Hutchinson, Sr., which had not been expended for the purposes of the estate; and all of the intangibles which came into her possession as executrix were disposed of and reduced to cash prior to her death. She died in July, 1933, and William B. Hutchinson and Gerritt S. VanDeusen were appointed administrators of her estate.

After the death of Emma Hutchinson, Amy Arnt was appointed and qualified as administratrix *de bonis non* with the will annexed of the estate of William B. Hutchinson, Sr., and initiated this action by filing a claim

and petition as administratrix of the estate of William B. Hutchinson, Sr., and for that estate, against the estate of Emma Hutchinson, claiming $131,000 on account of alleged conversion by Emma Hutchinson, as life tenant under the will of William B. Hutchinson, Sr., of personal property which he owned at the time of his death. The petition also asked for certain described chattels in the possession of Emma Hutchinson at the time of her death.

After rulings upon many pleadings, concerning which errors are assigned, the cause was at issue. There was a trial, the facts were found specially, the court rendered conclusions of law, and there was judgment against the estate of Emma Hutchinson for $75,718.10, and for the surrender of all of the chattels which were in her home at the time of her death.

Appellants, in numerous ways, save the question as to the right of the estate of William B. Hutchinson, Sr., and the administratrix to maintain this action. Appellees assert that the estate was not closed, since, by the terms of the order approving the final report, it was provided that the estate might be reinstated upon the motion of any person interested, upon notice. But the final report was approved after notice. It showed that all debts, liabilities, and bequests had been paid, except those to certain grandchildren, which were afterwards paid. If the part of the judgment providing for the reinstatement of the estate on the court docket had not been made, it might have been reopened and reinstated upon the docket, upon the motion of any person in interest, upon notice and the showing of a necessity for having it reopened, so that part of the order is mere surplusage. It is also asserted upon the authority of *Brannock* v. *Stocker, Adm'r* (1881), 76 Ind. 558, and other cases, that the legatee for life is not entitled to the personal assets, but that the same

shall be invested under the direction of the court, and the interest or income paid to the legatee for life. See *Koons, Adm'r* v. *Manifold et al.* (1901), 27 Ind. App. 643, 62 N. E. 116, and cases there cited. That, since it was the duty of the executrix to hold and invest the personal estate, she must be presumed to have done so, and that she is answerable as executrix, and that therefore an action against her should be in the name of the estate or the administering officer succeeding her. But, in *Brannock* v. *Stocker, Adm'r, supra,* the will provided: "I give and bequeath to my beloved wife . . . all my property, both real and personal, during her natural life." . . . The provision under consideration here is: "The residue of my estate shall go to my wife . . . to have and to hold the same for her use and benefit." . . . "To have and to hold" implies custody and possession. *Scott et al.* v. *Scott* (1908), 137 Iowa 239, 114 N .W. 881, 23 L. R. A. (N. S.) 716, and cases cited.

Emma Hutchinson took possession of the residue of the personal estate and held it in her own name. It is true that her account in the bank, of which her stepson-in-law was president, was continued in the name of the estate, but she wrote checks against the account in her own name. She transferred securities, and had them reissued in her own name, and held and dealt with all of the personal estate, not as executrix, but in her individual capacity. Her responsibility for the preservation of the principal of the personal estate, if any, was to the remaindermen, and not to the estate of her husband. Any right of action for conversion is in the remaindermen. They are the real persons in interest. Appellants brought these remaindermen into the case by cross-complaint.

The principal question presented by the errors assigned involves a construction of clause 4 of the will of William B. Hutchinson, Sr. The court below adopted

appellees' theory, as indicated by its second conclusion of law, which is as follows: "That Emma Hutchinson, during her life-time, subsequent to the death of William B. Hutchinson, Sr., deceased, was, under the last will and testament of said William B. Hutchinson, Sr., entitled only to receive the income from all of the property of which said testator died seized—real and personal—with power to make conveyances of any and all real estate of which the testator died seized."

Appellants contend, first, that the will vested in the widow absolute title to the personal property and fee simple title to the real estate; or, second, if the widow is limited to a life estate, it was subject to diminution, and she had power to dispose of or use the real or personal estate for her own benefit or pleasure, without limitation, and that the remaindermen take only such parts of the estate as were not disposed of and used by her.

It will be noted that the will does not expressly provide that the widow may use the corpus of the estate, in her discretion, for her maintenance and comfort, as is some times provided. In the cases already referred to, and in many others that might be cited, the words, "to have and to hold the same for her use and benefit," are held not to give any right to consume or diminish the estate, except as to such tangible personal property as would naturally be consumed in the use thereof; and money and intangibles are not of that character. It is contended with much earnestness that, where a will disposes of real and personal property in identical language, and in the same connection, the estates created are the same, and that if there is power of disposition as to the one, there is power as to the other. We are here confronted, however, with an express power to sell and convey real estate, with no expression as to the personal property. In such cases

the rule, *expressio unius; exclusio alterius,* immediately suggests itself. But the purpose in construing a will is to ascertain and give effect to the intention of the testator, so long as the same may not interfere with the established rules of law. This purpose is to be ascertained upon a consideration of the will in its entirety, and words and expressions in the will are to be liberally construed and interpreted to this end. The object is not the determination of the usual and ordinary meaning of words and expressions used in the will, nor is the testator's intention to be determined from isolated words, phrases, or expressions. The object is to discover the testator's intention from all of the language of the will. The meaning which the testator intended to convey, by the use of particular words and expressions, will be determined from their relationship to other words and expressions used, and, when his intention is discovered, it will be enforced, notwithstanding that a meaning broader or narrower than is usual be given to particular words and phrases.

There is no residuary clause in the will, in the event of his wife surviving the testator, except that contained in the proviso at the end of the fourth item. When one makes a will it is presumed that he intends to distribute all of his property, and, since a construction which would result in partial intestacy is contrary to such a presumption, it will be avoided where any other reasonable construction is open. If the intent of the testator is doubtful, a construction will be favored that will dispose of the property devised in the manner in which the law would have disposed of it had the deceased died intestate; and, where there is a doubt as to the testator's intention as to the disposition of the residue of his estate, a construction will be favored which throws the residue to his heirs at law.

An estate to a wife "so long as she shall remain my widow" is terminated either by the marriage or the death of the wife. The proviso in the fourth ▮ clause, however, only disposes of the remainder in case she shall remarry. But we must construe the clause to also mean that at the widow's death it is the desire of the testator that the remainder shall go to his children, share and share alike. Any other construction would leave him intestate as to the residue in such an event.

It is also clear from the proviso that the testator anticipated that, upon the death or remarriage of his wife, the estate which would revert to his children might ▮ be diminished; and, since it cannot be supposed that he expected his wife to do otherwise than he intended, it must be presumed that he intended that she might diminish it by consuming some of it. The proviso does not say that his personal estate, and that part of his real estate remaining undisposed of, shall go to and be divided among his heirs, but that that portion of his estate remaining undisposed of shall go to them. If it were not for the clause, "and to have the right to sell and convey any and all real estate, and to execute deeds of conveyance therefor," the proviso would justify the inference of an intention that the widow might consume so much of the corpus of the estate as might be reasonably necessary for her comfort and well-being. Any construction of the will limiting the widow's right to the bare income of the personal property would render meaningless that language in the proviso which refers to property undisposed of by her. It is necessary to a fair construction that all of the words and expressions in a will be given effect, if possible; and, to give the language of the testator full effect, it is necessary to infer an intention that the widow should have the right to dispose of some of the estate. A provision that real

estate may be consumed and used, but that the personal estate must be preserved intact in its entirety, is so unusual and contrary to common practice that it arrests attention. Ordinarily, if there is a difference in the disposition of property, it is the other way, since personal property in its very nature is more transient and unstable and difficult to preserve.

In determining the testator's intention, where it is obscure, the circumstances and conditions surrounding him at the time the will was made, his manner of living, and the relationship of the parties involved may be looked to as an aid in construction. Emma Hutchinson was a second wife, younger than her husband by several years, the mother of his youngest child. She had raised his older children, and her son did not know until maturity that his sisters were not full sisters. The testator was a man of considerable means. His will was made two years before his death. At that time his daughters were married, their husbands comfortably established in business enterprises in which the testator had an interest. The family lived in a seventeen-room house, comfortably equipped. This residence, which was considered worth $25,000, had been conveyed to his wife as her own. Mrs. Hutchinson had a taste for art, which was encouraged by her husband. She purchased objects of art, and he purchased them for her. He had taken her on two extensive trips to foreign lands. They lived a life of comfortable affluence. Since the home in which they lived was conveyed to her, it cannot be doubted that the testator intended that she should live in it after his demise. It was expensive to maintain. In addition to provisions made for her in his will, he left an insurance policy payable to his wife amounting to over $23,000. There is nothing to indicate that the testator desired his wife to live in any other station or manner than that

to which he had accustomed her, and there is every indication that that was his intention. The attitude of the members of the family toward each other is indicated not only by the fact that the children were all raised without distinction or difference in their treatment, but by a further significant fact. After the father's death it developed that the youngest child, the son of Emma Hutchinson, received about $2,000 more from insurance policies than was received by his sisters. Mrs. Hutchinson gave each of her stepdaughters $2,000 to equalize this difference. That the entire family felt that the estate was considerable and more than sufficient to take care of the needs of the widow and of the family, is evidenced by the fact that the widow, with the acquiescence and approval of the children, constructed a family mausoleum at an expense of more than $11,000, and a memorial fountain in memory of her husband at an expense of over $1500. The personal estate consisted of money in bank, various securities, some of which represented an interest in corporations controlled by the family, household goods and equipment, an automobile, and such other tangible property as will be found in the estate of a man in similar circumstances accustomed to comfortable living. The testator had always been, and continued to the end to be, liberal and generous in his treatment of his wife. It was reasonable to anticipate that she might survive him for many years, as she did. The testator was experienced in business affairs. His business interests were diversified. He must have known and understood that the tangible personalty of his estate would be used, consumed, worn out, and made obsolete. He could not have contemplated that his household effects and family conveniences should be converted into cash and the proceeds put at interest, since his wife would have been required to purchase other household

goods and effects for her comfortable living. He could not have intended that she abandon the large home which he had given her, the cost of maintenance of which was considerable, and to the maintenance of which its furnishings and equipment were essential, unless like new furniture and equipment should be substituted at considerable expense to his wife and to the depreciation of such of his or his wife's estate as might remain at her death or remarriage. Without an enabling provision in the will, the intangible personal estate, consisting of money, stocks, bonds, etc., might be sold and disposed of and title transferred effectively by his surviving wife, and this was done, and other securities taken in her name, with the knowledge and upon the advice of the husband of one of the daughters and with his cooperation. But the real estate which the testator left, which was a comparatively small item, could not be effectively conveyed by the wife alone, and there might be difficulties in the way of giving a good title while she survived, if it became desirable to dispose of it. In the light of these circumstances, and the fact that there is no express provision in the will prohibiting her from disposing of personal property, and the fact that there is no distinction between personal and real property in the proviso in the fourth clause, and that that proviso indicates an expectation that some of his estate might be disposed of by his wife, it is reasonable to assume that the purpose in inserting the words, "and to have the right to sell and convey any and all real estate, and to execute deeds of conveyance therefor," was inserted for the purpose of expediting the transfer of real estate, and not to indicate a limitation upon the power to dispose of personal property, since that power existed independent of an express provision. The right to consume portions of the estate can be reasonably inferred from

the proviso, which makes no distinction between real and personal estate. In the light of this clause, he must have intended the words, "to have and to hold the same for her use and benefit," to have a broader meaning than is generally attributed to them.

All of the estate, real and personal, except a small piece of real estate not in question here, was disposed of, and the proceeds used or converted into money, which was used or invested in personal property, tangible or intangible. It is conceded that the widow did not live extravagantly, or seek to improperly divert the estate, but that, as expressed by one of the daughters, she lived as they had always lived. As the property of the estate was disposed of, the proceeds were commingled with and deposited in the same bank account in which more than $30,000 of the widow's own money was deposited; and all disbursements, whether for her living, or the expenses of the estate, or for investment, were drawn from the same account. Since it must be presumed that the widow sought to conform to the intention of the testator that she have only the income from his estate, unless more should be necessary for her reasonable needs, and since there was no limitation upon her right to use the proceeds of the life insurance policy which he had left her, it must be presumed that her expenditures for her own purposes, out of the commingled funds, were, first, out of the income from the estate until it was exhausted; second, out of her own funds derived from life insurance or otherwise, until those funds were exhausted; and, finally, out of the corpus of the decedent's estate. Since the husband, in his lifetime, conveyed to her their residence property, as her own, and not for life with remainder to his children, he must have intended that it should remain permanently hers, uninfluenced by any such reversionary provisions as applied to the property which he left

her by the will. It is true that, upon her death, this would go to her son, the youngest child, to the exclusion of the other children. But this might have been intended as an equalization of advantages which may have been given to the daughters or their husbands in establishing them in business. Concerning this there need be no inquiry. It was his property to do with as he liked.

It appears that something over $90,000 was realized in cash out of the personal assets, and $6,760 out of the real estate, of William B. Hutchinson, Sr., all of which went into the common fund, together with something over $30,000 of the funds of Mrs. Hutchinson arising from life insurance and the sale of real estate in her own name; that, from the death of her husband until her death, the income on all of these funds and the investments arising therefrom was something over $140,000; that she paid out of this fund, in the settlement of the estate of her husband and the payment of legacies, in the building of a mausoleum and a memorial fountain, and in advancements to her two stepdaughters, sums aggregating over $65,000; that the expenditures of the widow for her own use and benefit, including repairs to her property, exceeded the total income from the common fund by approximately $55,000. Insofar as her expenditures exceeded the income from the common fund, they must be treated as an expenditure out of her private funds, which went into the account, aggregating $31,385.29. The balance in the fund at the time of her death, including investments, was something under $28,000. This is less than the net amount of proceeds of her husband's estate that went into the fund after deducting the expenditures in the settlement of his estate, in building a mausoleum, etc., and all of it must be treated as representing the residue of the estate of her husband. It is not clear whether

there are assets of the husband's estate which are still held, and which have not been converted into cash, and which did not go into the common fund. If so, they must be treated as a part of the residuary estate which passes on. If there are tangible personal assets still in existence, which were part of her husband's estate, they must be treated likewise. Tangible personal assets of the husband's estate, the benefit of which consisted in the use of them, and which have become obsolete or worn and discarded, must be treated as having been intended for such use and consumption. Tanglible personal assets in the estate of Emma Hutchinson, which were purchased for the same purpose, for the pleasure of using them, and not for profit or investment, must be treated as hers and the property of her estate.

As the will is interpreted, there was no conversion. After using the income from her husband's estate and her own personal property, Emma Hutchinson had the right under the will to consume the principal of her husband's estate. Such as has been consumed is gone. The right to possession of the remainder vested in "the heirs of the body" of William B. Hutchinson, Sr., at her death, share and share alike.

The technicalities involved in the pleadings and practice need not be considered. All of the parties are before the court.

Judgment reversed, with instructions to the trial court to enter an order directing the administrators of the estate of Emma Hutchinson to turn over and deliver to the heirs of the body of William B. Hutchinson, Sr., share and share alike, all of the remainder of the so-called fund, consisting of securities, intangibles, and money in bank, which was in the possession of Emma Hutchinson at the time of her death, together with any tangible personal property in the possession of Emma Hutchinson, which was part of her husband's estate, or

which was purchased for investment, or profit, or income producing purposes, as distinguished from that which was purchased for personal use, for comfort, enjoyment, and consumption; and to enter judgment against the estate of William B. Hutchinson, Sr., that it take nothing.

## ON PETITION FOR REHEARING.

FANSLER, J.—Both appellees and appellants have petitioned for a rehearing. Appellees in their petition assert that prior to the beginning of the instant case the administrators of the life tenant's estate brought a proceeding to determine the right to possession of $20,000 of bank stock, which had been part of the estate of William B. Hutchinson; that the trial court adjudged that the bank stock continued to be the property of the William B. Hutchinson estate, and that the appellee Amy Arnt, administratrix *de bonis non* with the will annexed, was entitled to the stock and required to liquidate it and distribute it in accordance with the will; that no appeal was taken, and that therefore the question of the right to possession of all of the property that was part of the estate of William B. Hutchinson was adjudicated, and that in this action the parties are bound by the adjudication. No such question was presented by the briefs prior to this petition for rehearing. No cross-errors were assigned, nor is it now pointed out that there was any finding of fact or conclusion of law concerning the question. A failure to find the necessary facts would be a finding against appellees on this issue if it was presented, but in any event it is too late to present the question upon a petition for rehearing. By not presenting it in their original brief, the question has been waived by appellees. The only question of *res judicata* referred to in appellees' original brief involves a ruling

on an answer in abatement. It is contended by appellees in their original brief that, since, upon the determination of the issue raised upon the answer in abatement, the court held that Amy Arnt, administratrix *de bonis non* with the will annexed, might maintain an action, and, since no error was assigned upon that ruling, and the evidence heard upon that issue not having been made a part of the record, the ruling is *res judicata* upon her right to recover. This contention was not taken seriously, since the difference between a right to maintain an action and to recover in the action are obviously different.

Appellees say that the question of who has the liquidation of the residue of the estate after the life tenant is not suggested by the opinion. But there need be no liquidation. The heirs may, if they desire, hold the property intact in joint ownership. Questions are also suggested as to the effect of the opinion in case there were unpaid legacies or debts of the estate. But no such question is presented by the record here, since it does not appear that there were any unpaid debts or legacies, but, on the contrary, all debts and legacies have been paid. Under such a state of facts, the question whether recovery should be had by the administratrix or the residuary heirs is but a technicality at best, since a recovery by the administratrix would be for the benefit of the heirs and the result would be the same.

Appellants in their petition suggest that the competency, as a witness, of Charles E. Arnt, the husband of Amy Hutchinson Arnt, was not passed upon in the original opinion. He testified to many things that are irrelevant and immaterial in the light of the law as laid down in the opinion. He kept books for Mrs. Hutchinson and acted as her agent while she was executrix of her husband's will, and acted as her

adviser and agent in the management of her own business after her husband's death. There does not seem to be any dispute as to the material facts involving the amount and character of the William B. Hutchinson estate and the personal estate of Mrs. Hutchinson. The statute, which makes parties to the issue and record incompetent as witnesses in cases like the one at bar, provides that the court may in its discretion require such parties to testify, and that the discretion of the court thus exercised may be reviewed by this court. It is only where there is an abuse of discretion that a judgment will be reversed because the court permitted such a witness to testify. Mrs. Hutchinson apparently imposed implicit confidence in the witness. He seems to have kept all of her records and transacted all of her business for her. Since she permitted him, a party in interest, to transact her business for her and keep her records as executrix, rather than intrust those duties to a stranger, she may have made it impossible for an accounting of the property of the estate to be had without recourse to his testimony. Under such circumstances, we see no abuse of discretion in permitting him to testify, nor does it appear that appellants were injured or their rights prejudiced thereby.

Appellants contend that the trial court cast the burden of proving ownership of certain chattels upon appellants, and that this was error. Appellees established, and it is not disputed, that the household furniture and equipment were the property of William B. Hutchinson at the time of his death, and that the widow continued to occupy the home as it was furnished and to use it during her lifetime. Appellants contend that much of the household equipment had become worn out and obsolete and had been replaced. Expenditures for such replacements should be treated as having been made in maintaining the household

equipment as a whole, especially as recourse was had to the corpus of the estate for funds for that purpose, and all household equipment should be treated as part of the corpus of the estate of William B. Hutchinson. A distinction should be made in respect to the strictly personal effects of Mrs. Hutchinson. Articles of personal property can be readily allocated to one group or the other. It is unimportant whether particular articles of household equipment were purchased before or after the death of William B. Hutchinson, and therefore appellees were not required to make proof concerning that matter.

Appellants assert that the mandate of this court is so indefinite and uncertain that it cannot be carried out. They stress particularly a note for $1,500, which is part of the assets of the Emma Hutchinson estate, and contend that it was taken as part purchase price for her own property. If the widow held this note, which represented part of her own estate, which she might have disposed of and used for her own support, it was not necessary for her to spend an equal amount out of the corpus of the estate of her husband, and therefore equity will require that this be treated as part of the residue of her husband's estate.

Appellants contend that the mandate should be modified and a new trial ordered, but it appears that there is no substantial controversy as to the facts, and that, under the law as declared, a decree which will terminate the controversy can be readily written. Disputed facts involve unimportant chattels, the value of which is less than the expense of a new trial.

The petitions for rehearing are denied.